ROBERT L. ZIMMERMAN vs. LESTER H. BOGOFF & others[1]
(and a consolidated case[2]).

Hampden.  April 4, 1988. - June 22, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Corporation*, Stockholder, Close corporation. *Fiduciary. Joint Enterprise.
Damages*, Breach of fiduciary duty, Lost profits, Breach of contract,
Interest. *Consumer Protection Act,* Availability of remedy. *Contract*,
Performance and breach. *Interest.*

Where one of the two equal shareholders in a close corporation used his
control over the "purse strings of the enterprise" to withhold substantial
sums of money legitimately due a corporation wholly owned by the
other shareholder; confiscated tools, good will, and other assets of the
close corporation for the use of his own secretly-created corporation, to
which he diverted business of the close corporation; and carried on other
activities detrimental to the well-being of the close corporation, and
where he failed to sustain his burden of demonstrating a legitimate
business purpose for his actions, a judge was warranted in finding that
the shareholder had breached his fiduciary duty to the other fifty percent
shareholder. [657-659]

Where two individuals agreed, in an arrangement similar to a joint venture,
to contribute their own skills and efforts and the particular attributes of
their respective corporations to build a certain piece of large machinery,
for that purpose creating a close corporation in which each individual
was a fifty percent shareholder, and where one of the shareholders, in
breach of his fiduciary duty, caused the failure of the other shareholder's
wholly-owned corporation, an asset which had been, in effect, loaned
to the venture, it was held that the offending stockholder was properly
charged with personal liability for the remaining debts owed by the close
corporation to the now defunct corporation; that the innocent stockholder
was entitled to damages reflecting the fair value of his lost asset in order
to restore him as nearly as possible to the position he would have been
in had there been no wrongdoing; that the evidence supported a judge's
assessment of damages in the amount of $150,000 for the loss of the

---

[1] BAB Atlas, Inc., and CAL Abco, Inc.

[2] Atlas Design & Manufacturing Co., Inc. *vs.* BAB Atlas, Inc., &
another.

corporation; and that, since the judge clearly considered the damages due the innocent stockholder personally apart from debt due the defunct corporation in calculating its lost value, no double recovery resulted. [659-662]

The Consumer Protection Act, G. L. c. 93A, was inapplicable to a dispute which was principally a private grievance between the two equal shareholders in a close corporation, which did not occur in the ordinary "conduct of any trade or commerce" within the meaning of G. L. c. 93A, § 11, and in which the aggrieved party had available an alternative avenue of relief in the form of an action for breach of fiduciary duty. [662-663]

An assessment of prejudgment interest on certain claims for breach of contract was not warranted, where the date of breach or demand was not sufficiently established. [663]

CIVIL ACTION commenced in the Superior Court Department on April 21, 1981.

CIVIL ACTION commenced in the Springfield Division of the District Court Department on November 12, 1981.

On removal of the second case to the Superior Court Department the cases were consolidated for trial and heard by *John F. Moriarty*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Erik Lund* (*Miles E. Hoisington* with him) for Lester H. Bogoff.

*Edward J. McDonough, Jr.* (*John J. Egan & Lawrence B. Wernick* with him) for Robert L. Zimmerman & another.

LYNCH, J. This case involves the mutual obligations of parties to a joint venture and fellow shareholders in a close corporation. The issue of the proper remedy for a breach of those duties is also present. We also consider whether the plaintiff Atlas Design & Manufacturing Co., Inc. (Atlas Design), makes out a claim for violation of G. L. c. 93A, and whether the judge should have awarded prejudgment interest.

The defendant, Lester H. Bogoff, and the plaintiff, Robert L. Zimmerman, are 50% shareholders in BAB Atlas, Inc. (BAB Atlas), a Massachusetts close corporation, which since has failed. As a result of various disputes between the parties,

described in detail below, Zimmerman brought suit in Superior Court against Bogoff alleging, inter alia, that Bogoff had violated fiduciary duties owed to Zimmerman and had violated G. L. c. 93A. Later Atlas Design, Zimmerman's wholly-owned corporation and a coplaintiff here, brought suit against Bogoff and BAB Atlas in District Court alleging, inter alia, breach of contract, violation of c. 93A, and deceit. The cases were consolidated for trial and heard without a jury in the Superior Court. The judge found in favor of Zimmerman and Atlas Design and ordered Bogoff to pay a total of $284,680.30 in damages plus interest and costs. Judgment was entered accordingly and Bogoff and Atlas Design appealed.[3] We took the case here on our own motion. We affirm.

Proper understanding of this case requires a somewhat detailed recitation of the facts. Zimmerman was at all times relevant here the founder and sole shareholder of Atlas Design, a machine shop located in Agawam. The defendant Bogoff was sole shareholder of two corporations, BAB Transfer, Inc. (BAB Transfer), and BAB Warehouse, Inc. (BAB Warehouse). The former corporation was engaged in the business of trucking and heavy hauling; the latter was a warehousing business. Both businesses operated from a building in Springfield owned by Bogoff.

In 1975, it came to Bogoff's attention that a concern in Vermont required a certain piece of large machinery. Bogoff's corporations possessed the space and equipment necessary to assemble and transport the machinery to the customer, but lacked the requisite design expertise and manufacturing capabilities. These latter qualifications, however, were ones which Atlas Design could provide.

Accordingly, Bogoff approached Zimmerman and proposed that the two contribute their own skill and effort and the particular attributes of their respective corporations to accomplish

---

[3] Zimmerman and BAB Atlas also filed notices of appeal. Zimmerman, however, does not challenge any action taken below. BAB Atlas has not filed a brief and its appeal is therefore deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

the job. Zimmerman agreed and a new corporation, BAB Atlas, Inc., was formed, in which Bogoff and Zimmerman were each 50% shareholders. Bogoff and Zimmerman constituted the entire board of directors. Officers were Bogoff as president and Zimmerman as treasurer. The order for the Vermont company was completed in 1976.

The parties then resolved to go into the business of manufacturing metal castings. In order to do this, they required a new type of machinery, known as "computerized numerically controlled" (CNC) machinery. It was agreed that Bogoff, through his corporations, would purchase CNC machinery and lease it to BAB Atlas.[4] Bogoff's corporations were also to carry out administrative work, such as billing, bookkeeping, and collections. As a result, the judge found that Bogoff "control[led] the purse strings of the enterprise . . . ." Atlas Design, for its part, would use its reputation to attract customers and then perform the actual manufacturing work, billing BAB Atlas therefor "at cost" — a term which apparently was never explicitly defined.[5] The metal castings venture did not succeed; BAB Atlas was running at a $41,300 annual deficit by the end of 1978.

At about this time, Bogoff questioned the amounts due from BAB Atlas to Atlas Design for the latter's "at cost" production of the castings. Zimmerman had been billing BAB Atlas at a "shop rate" (labor costs plus 100% for overhead) of between $12 and $17 per hour. The rate as computed by Bogoff was substantially lower. Beginning in December, 1978, Bogoff caused BAB Atlas to pay Atlas Design using his computation rather than Zimmerman's. As a result, over the course of the

---

[4] Despite the parties' agreement that neither was to make a profit in his dealings with BAB Atlas, Bogoff fixed the monthly rentals on the CNC machines so as to return a profit of from 0.5% to 1.5% per year to the lessor after payment of bank charges.

[5] The "at cost" billing was only for the metal castings work using CNC machinery. Income from any work done by Atlas Design for BAB Atlas that did not require CNC machinery was the sole property of Atlas Design and was referred to by the parties as the "exchange account." The exchange account is not a part of this dispute.

next year, Bogoff caused BAB Atlas to withhold from Atlas Design a total of $100,471.51, reflecting the difference between the amount billed on Atlas Design's invoice and the amount Bogoff believed he should pay. The judge found that Zimmerman's calculation of the "shop rate" was "reasonable and realistic." As of December 1, 1979, Bogoff admitted that BAB Atlas also owed Atlas Design some $80,000 in other charges, but, Bogoff contended, BAB Atlas did not have the funds to pay these charges.

The impact of these unpaid amounts on Atlas Design was severe. By the end of 1979, Atlas Design had fallen behind in payment of its withholding taxes to the Internal Revenue Service and in its loan payments on its machinery and equipment. The Internal Revenue Service threatened to padlock the shop and the bank threatened to foreclose its security interest in Atlas Design's machinery and equipment. Had these threats been carried out, the judge found, Atlas Design would have lost approximately $300,000 worth of work in progress.

In order to avoid these problems and to complete the work in progress, on December 8, 1979, Bogoff and Zimmerman met and agreed as follows: that the CNC machines leased to BAB Atlas and any necessary "back-up" machinery owned by Atlas Design would be moved out of Atlas Design's shop to Bogoff's building in Springfield; that BAB Atlas would rent the Atlas Design-owned machinery from Atlas Design at a rental sufficient to stave off foreclosure from Atlas Design's bank; that BAB Atlas would employ as many of Atlas Design's workers as necessary to complete the work in progress; and that the dispute over the proper formula for calculating the "shop rate" would be negotiated.

As a result of this agreement, the Atlas Design operation was moved to Bogoff's building in Springfield, some of Atlas Design's employees were taken on to finish the work in progress, and Bogoff caused BAB Transfer to loan sufficient funds to BAB Atlas to keep it in operation. However, Bogoff reneged on his agreement to have BAB Atlas pay rent for Atlas Design's machines, and negotiations over the "shop rate" failed. Without the rentals from BAB Atlas, Atlas Design was unable to meet its

bank payments and, at a meeting involving the principals, their attorneys and Atlas Design's bank, the bank announced that it was accelerating the due date of the principal amount of the loan. Attempts to reach an accommodation with the bank failed.

On February 20, 1980, while Bogoff was in Puerto Rico, Zimmerman removed Atlas Design's machinery from the Springfield location and sold it at auction. The proceeds were distributed among the bank, the Internal Revenue Service, and Atlas Design's other creditors. Zimmerman himself received nothing. Upon his return from Puerto Rico, Bogoff purchased new equipment, and resumed the work in progress after a month's delay.

Meanwhile, near the end of 1979, without informing Zimmerman, Bogoff had instructed his attorney to set up a new corporation, chartered to carry on the business of a machine shop. The new corporation, CAL Abco, was created on January 14, 1980, with Bogoff as sole shareholder. Bogoff stopped soliciting business for BAB Atlas and employees were instructed to reject orders directed to BAB Atlas and divert the customers to CAL Abco. The CNC machinery previously leased to BAB Atlas was leased to CAL Abco. Tooling and equipment owned outright by BAB Atlas, including tooling and tapes developed by BAB Atlas for its own customers while it was in business, were leased to CAL Abco. CAL Abco began business with substantially the same employees as had been acquired by BAB Atlas from Atlas Design when Atlas Design's operations were moved to Springfield. Bogoff caused BAB Atlas to hire CAL Abco to complete BAB Atlas's work in progress.[6] Thereafter, CAL Abco was unsuccessful, and was out of business within a year.[7]

---

[6] CAL Abco charged BAB Atlas a "shop rate" of something over $20.00 per hour for this work.

[7] Bogoff had attempted to establish CAL Abco as a going business by having an employee of Hispanic origin represent that CAL Abco was a "minority-owned small business" in order to qualify for certain special treatment in bidding on defense contracts. This representation was false. Bogoff later offered the business for sale at a price of $187,000, but found no buyers.

After Bogoff took control of BAB Atlas, entities controlled by Bogoff which had leased machinery to BAB Atlas were paid in full. Bogoff's corporation, BAB Transfer, which had loaned money to BAB Atlas, was also paid in full. Bogoff also caused BAB Atlas to pay BAB Transfer the sum of $23,630.76, which was due BAB Transfer from Atlas Design, and charged that amount against the amount due from BAB Atlas to Atlas Design. As to amounts due Zimmerman or Atlas Design, some of the accounts payable were initally paid off, but the judge found that "[w]ith the exception of the exchange account payments, however, nothing has been paid to either Atlas Design or Zimmerman by either BAB Atlas, Bogoff or any of Bogoff's corporations since January 22, 1980. This is true despite the fact that Bogoff admits that at least some substantial sum of money ($44,000) is due and owing. Indeed, even as of the end of 1984, BAB Atlas's financial statement shows accounts payable to Atlas Design in the amount of $87,957 and to Zimmerman personally in the amount of $3373. Even those figures, however, do not reflect the $100,471.51 that Bogoff caused BAB Atlas to hold back from Atlas Design during 1979."

At about the time CAL Abco ceased operations, Bogoff sold a number of used cutting tools, most of which belonged to BAB Atlas, and a Raytheon shock platform belonging to BAB Atlas. The judge found that "[h]e appears to have intermingled the proceeds of at least some of those sales with his personal funds." In March, 1983, most of CAL Abco's assets were sold at auction for some $198,000. Bogoff also auctioned off the remaining equipment owned by BAB Atlas. By June, 1983, CAL Abco's assets had been reduced to several hundred dollars in cash and one account receivable of questionable collectability.

At the time of trial, CAL Abco, Atlas Design, and BAB Atlas, while continuing to exist as corporate entities, were substantially defunct. BAB Warehouse had been merged with BAB Transfer and BAB Transfer had been liquidated. Before liquidation, Bogoff had siphoned off most of BAB Transfer's assets in the form of cash bonuses. Upon liquidation, he re-

ceived $50,000 in cash, some corporate vehicles, and the remaining CNC machine. Zimmerman left the machine shop business and was operating a motel on Cape Cod at the time of trial.

1. In *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 593 (1975), we held that shareholders in a close corporation owe each other a fiduciary duty akin to that owed by partners to one another. See *Bessette* v. *Bessette*, 385 Mass. 806, 808-809 (1982). The duty owed is one of "utmost good faith and loyalty." *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, *supra*, citing *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952). However, the *Donahue* remedy is not intended to place a strait jacket on legitimate corporate activity. Where the alleged wrongdoer can demonstrate a legitimate business purpose for his action, no liability will result unless the wronged shareholder succeeds in showing that the proffered legitimate objective could have been achieved through a less harmful, reasonably practicable, alternative mode of action. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 851-852 (1976). See *Leader* v. *Hycor, Inc.*, 395 Mass. 215 (1985).

The defendant contends that the *Donahue* case offers Zimmerman no aid because (1) *Donahue's* equitable remedy does not extend to a 50% shareholder who has open to him the legal recourse of dissolution; and (2) even if *Donahue* does apply here, Bogoff's conduct did not violate any fiduciary duty because it served a legitimate business purpose. We reject these arguments.

The protections of *Donahue* are not limited to those with less than 50% share ownership. While it is true that a minority shareholder is vulnerable to oppression or "freeze-out" by the majority, *Donahue* itself recognized that, "[i]n the close corporation, the minority may do equal damage through unscrupulous and improper 'sharp dealings.'" *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, *supra* at 593 n.17. Furthermore, while the general principles of *Donahue* have been refined, see *Goode* v. *Ryan*, 397 Mass. 85, 91-92 (1986); *Wilkes* v. *Springside Nursing Home, Inc.*, *supra*, there has been no quali-

fication upon the proposition that fiduciary obligations may arise regardless of percentage of share ownership. *Donahue v. Rodd Electrotype Co. of New England, Inc., supra.*

For example, in *Smith* v. *Atlantic Properties, Inc.*, 12 Mass. App. Ct. 201 (1981), a provision in the corporation's articles of organization had the effect of giving a minority shareholder "veto power" over corporate actions. One shareholder consistently used this power to prevent the corporation from declaring a dividend, to his own personal advantage, but to the detriment of the corporation and the other shareholders. On the authority of the *Donahue* case and its progeny, the Appeals Court affirmed a judgment against the dissident shareholder, notwithstanding the fact that he owned only a minority interest. See *Helms* v. *Duckworth*, 249 F.2d 482 (D.C. Cir. 1957), cited in *Donahue* v. *Rodd Electrotype Co. of New England, Inc., supra.*

Here, the judge noted that Bogoff did "control . . . the purse strings of the enterprise." Bogoff used this power to withhold substantial sums of money legitimately due Zimmerman's corporation and to confiscate BAB Atlas's tools, good will, and other assets for the use of his own secretly-created corporation. He reneged on the machinery rental agreement despite his full knowledge of the probable effect of such an action on Atlas Design. In such circumstances, we will not penalize Zimmerman for attempting to negotiate rather than dissolving the corporation. Cf. *Smith* v. *Atlantic Properties, Inc., supra* at 208-209, citing *Helms* v. *Duckworth, supra* at 485-488. Furthermore, even before Zimmerman took back Atlas Design's machinery, Bogoff had acted to create his new corporation, CAL Abco, and to divert BAB Atlas's business thereto. Once BAB Atlas had been stripped of its essential assets, dissolution could offer Zimmerman no meaningful aid.

Bogoff has not sustained his burden of demonstrating a legitimate business purpose for his actions. See *Wilkes* v. *Springside Nursing Home, Inc., supra* at 851-852. His assertion that the dispute over the proper formula for computing the "shop rate" was a "legitimate business disagreement" because BAB Atlas lacked the funds to pay the rate as computed by Zimmerman

rings hollow, given that Bogoff not only acquiesced in paying rates according to that formula for some three years, but also caused BAB Atlas to pay his own company, CAL Abco, an even higher "shop rate" for similar work. Bogoff preferred his own companies in paying off BAB Atlas's debt, reneged on a good-faith agreement to pay rent to his fellow venturer's corporation, and confiscated the assets of the venture for his own corporation. We fail to comprehend how such actions may serve any legitimate corporate purpose.

2. The remedy fashioned by the judge was two-fold. First, the judge computed the remaining debts owed Atlas Design from BAB Atlas to be $126,644, and held both Bogoff and BAB Atlas liable for this amount. Second, he calculated the damages due Zimmerman personally to be $158,036.30. Of this amount $1,125 represented one-half of BAB Atlas's corporate funds which Bogoff had used to pay his personal attorney; another $6,911.30 represented one-half of the amounts Bogoff realized from selling BAB Atlas's tools and tooling and the Raytheon shock platform. The balance of $150,000 the judge awarded as compensation to Zimmerman for the value of his machine shop business, which had been destroyed through Bogoff's actions.

Bogoff assails these remedies on several fronts. He claims that requiring him personally to pay unpaid amounts due from BAB Atlas to Atlas Design is inappropriate because his fiduciary duty under *Donahue* extended only to Zimmerman, not to Zimmerman's corporation. He also argues that the $150,000 award for the value of Zimmerman's ruined corporation is not properly allowable in a *Donahue* suit. Moreover, he claims that, even if such damages are proper, the judge lacked sufficient evidence on which to base the award. Finally, he argues that awarding damages both for the lost value of Atlas Design and for the unpaid debts constitutes a double recovery for Zimmerman. We consider each of these contentions in turn.

In concluding that both BAB Atlas and Bogoff should be liable for BAB Atlas's unpaid debts to Atlas Design, the judge recognized that BAB Atlas only lacked the necessary funds to

pay these debts because Bogoff wrongfully stripped the corporation of its assets. Bogoff argues, however, that stripping the assets was at best only a breach of duty to Zimmerman, and any duty to Zimmerman is irrelevant because the debt at issue is owed to Atlas Design, not to Zimmerman.

Such an argument exalts form over substance. See *Silversmith* v. *Sydeman*, 305 Mass. 65, 73 (1940). In substance, the arrangement among the various individuals and corporations here was a joint venture. Bogoff committed himself and his corporations to the enterprise and Zimmerman did likewise. The record discloses an intent to share equally in profits or losses. At the very least, "even if the arrangements at issue fall short of a textbook joint venture, they are sufficiently similar to such an endeavor to create a fiduciary relationship . . . similar to that which exists among parties to a joint venture." *Shain Inv. Co.* v. *Cohen*, 15 Mass. App. Ct. 4, 11 (1982). See *Wilson* v. *Jennings*, 344 Mass. 608, 614-615 (1962); *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952). Compare *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 624-625 (1964). Joint venturers owe one another substantially the same fiduciary duties as are owed by partners to one another. *DeCotis* v. *D'Antona*, 350 Mass. 165, 168 (1966). Hence, even were we to accept Bogoff's argument that no duty to Zimmerman's corporation arose under the principles of *Donahue*, we nonetheless conclude that he is bound to a duty of good faith and utmost loyalty to that corporation as a fellow participant in the venture.[8] See *DeCotis* v. *D'Antona, supra*; *Shain Inv. Co.* v. *Cohen, supra*.

In his position as "contol[ler] of the purse strings of the enterprise," Bogoff caused BAB Atlas to withhold from Atlas Design substantial sums which were legitimately due. His actions ultimately led to the total financial demise of Atlas Design. This was a clear breach of fiduciary duty. As the party respons-

---

[8] This was substantially the reasoning of the judge below when he noted that "Zimmerman and Atlas Design were acting as one person on the one side and Bogoff, BAB Transfer and BAB Warehouse were acting as one person on the other in what was essentially a partnership (albeit in corporate form) or joint venture."

ible for this wrongdoing, Bogoff is the proper source from which to extract the remedy. See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 854 (1976). Cf. *Samia* v. *Central Oil Co.*, 339 Mass. 101, 123-125 (1959).

Bogoff's claim that the judge was without power to award damages for the value of Atlas Design need not detain us long. "A court exercising traditional equity powers has power to remedy the wrong complained of and to make the decree effective." *Bodio* v. *Ellis*, 401 Mass. 1, 10 (1987), quoting *Hallahan* v. *Haltom Corp.*, 7 Mass. App. Ct. 68, 71 (1979). *Nigro* v. *Conti*, 319 Mass. 480, 484 (1946). Atlas Design was Zimmerman's asset, which Zimmerman in effect loaned to the venture. Bogoff, in breach of his fiduciary duty, destroyed that asset. Under the law of partnership, "where a partner has wrongfully appropriated partnership property, or has made secret profits either in his dealings with the partnership funds or in transactions which properly come within the scope of the partnership business, or has acquired a share in fraud of his partners, he must account for the results to the partnership in order that his copartners may share therein. . . . [T]he innocent partner is to be put as nearly as possible in the same position which he would have occupied if there had been no wrongdoing . . . ." *Shulkin* v. *Shulkin*, 301 Mass. 184, 192-193 (1938). As a result of Bogoff's wrongdoing, the judge found, Zimmerman's corporation was "totally destroyed." It was proper for the judge to award Zimmerman damages reflecting the fair value of his lost asset in order to restore him as nearly as possible to the position he would have been in had there been no wrongdoing.

Furthermore, the defendant has not persuaded us that the judge's assessment of damages for that loss in the amount of $150,000 was clearly erroneous because it was not based on sufficient evidence. The judge had before him evidence of the history of Atlas Design, the number of employees, the type of equipment, the names of its customers, and its gross sales. He also had an expert's opinion as to the value of CAL Abco ($200,000, not counting machinery and equipment) and evidence of Bogoff's asking price for CAL Abco ($187,000). It is significant in this regard that CAL Abco to a large extent

owed its existence to Bogoff's confiscation of BAB Atlas's assets, business and employees, and that BAB Atlas earlier acquired all of Atlas Design's employees, customers, and tools. "In the case of business torts, 'an element of uncertainty in the assessment of damages is not a bar to their recovery.' *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 430 (1976). An 'award of damages can stand on less than substantial evidence . . . particularly [in] the case of business torts, where the critical focus is on the wrongfulness of the defendant's conduct.' *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 426 (1982), citing *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352 (1912)." *Datacomm Interface, Inc.* v. *Computerworld, Inc.,* 396 Mass. 760, 777 (1986). *BBF, Inc.* v. *Germanium Power Devices Corp.*, 13 Mass. App. Ct. 166, 177 (1982), and cases cited. Therefore, we comprehend no error in the judge's finding.

As to Bogoff's argument that the remedy somehow results in a double recovery to Zimmerman, it is enough to note that the judge below stated that "[m]ere satisfaction of the debt due to Atlas Design will not compensate Zimmerman for the loss he has sustained as a result of Bogoff's perfidy." The judge then proceeded to award Zimmerman the value of his lost corporation. The clear implication is that the judge did not consider the debt due to Atlas Design in calculating the lost value of Atlas Design. Thus, no double recovery results.

3. Atlas Design argues that the judge below erred in not applying G. L. c. 93A, § 11, to Atlas Design's claims against Bogoff. We reject this argument.

The transactions at issue here were principally private in nature and thus do not fall within the purview of G. L. c. 93A. *Riseman* v. *Orion Research, Inc.*, 394 Mass. 311, 313-314 (1985) (c. 93A not intended to redress wrongs asserted by stockholder against a corporation in the internal goverance of the corporation). *Manning* v. *Zuckerman*, 388 Mass. 8, 14 (1983) (c. 93A not intended to apply to contract dispute between employee and employer which was principally "private in nature"). *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 467 (1982) (c. 93A "was intended to apply only to dealings between legally separate 'persons' engaged in arm's length transactions").

The reasoning in the above cited cases applies equally well here. The dispute is principally a private grievance between Zimmerman and Bogoff; it did not occur in the ordinary "conduct of any trade or commerce" within the meaning of G. L. c. 93A, § 11; and the aggrieved party has available an alternative avenue of relief in the form of a suit for breach of fiduciary duty. See *Riseman* v. *Orion Research, Inc., supra,* and cases cited. Therefore, we conclude that the judge properly denied Atlas Design's claim under G. L. c. 93A.

4. Atlas Design also argues that the judge erred in declining to award prejudgment interest on its claims against Bogoff and BAB Atlas for breach of contract. There was no error.

In a contract action, the test applied for determining the date from which interest should be calculated is as follows: "[P]rejudgment interest is to be calculated from the date of the breach or demand, if established. If the date of the breach or demand is not established, prejudgment interest is to be calculated from the date of commencement of the action." *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.,* 398 Mass. 118, 125 (1986). G. L. c. 231, § 6C (1986 ed.).

Atlas Design segregates its $126,644 damage award into two components: $119,970 representing amounts due to Atlas Design from BAB Atlas, and $6,674 for the rent withheld by Bogoff on Atlas Design's machinery and equipment. The date of breach or demand is not sufficiently established as to either amount.

Atlas Design claims that interest should accrue on the $119,970 amount from December 13, 1979, the date on which Atlas Design's machinery and equipment were moved from Agawam to Springfield. However, there is no finding by the judge that Atlas Design made any demand on this date or that this was the date of the breach. Therefore, we conclude that the date of breach or demand is not sufficiently established to warrant assessing prejudgment interest as to this amount. As to the $6,674 due for rent, again, there is no conclusive basis below to establish the date of demand or breach, and, therefore, the judge properly denied the request for prejudgment interest as to this amount as well.

*Judgments affirmed.*