Brassard, J.
The plaintiff in this action, Stephen Gerzof, M.D. (“Dr. Gerzof’), filed suit against Cignal Global Communications, Inc. (“Cignal”) and Andrew Perlman (“Perlman”), alleging breach of contract (Count I), deceit (Count II), and negligent misrepresentation (Counts III and IV). Dr. Gerzof now moves to amend the complaint to include violations of G.L.chapter 93A in the sale of a security (Count V) and breach of fiduciary duty (Count VI). Dr. Gerzof argues that amendment of the complaint will cause no prejudice to the defendants because discovery remains open until August 31,2001, and no trial date has been set. Dr. Gerzof further alleges that there has been no undue delay in filing this motion as the factual bases for the new allegations were only recently revealed in discovery. In opposition, Cignal and Perlman contend that Dr. Gerzofs Chapter 93A claim and breach of fiduciaiy duty claim are futile and unduly prejudicial since the new claims allege new facts and circumstances and would require the defendants to retake discovery. For the following reasons, the plaintiffs motion is ALLOWED in part and DENIED in part.
BACKGROUND
The Amended Complaint alleges the following facts.
In the spring of 1997, Dr. Gerzof entered into a contract with Cignal whereby the parties agreed that in exchange for Dr. Gerzofs $50,000 investment in Cignal, the company would issue Dr. Gerzof shares representing a non-dilutable two percent (2%) interest.[2] Dr. Gerzof subsequently invested an additional $30,000 in exchange for an additional one percent (1%) interest in Cignal in accordance with the same terms and conditions as his initial investment.
At the time of Dr. Gerzofs initial investment in Cignal, Cignal was organized as a Massachusetts limited partnership. On or about August 29, 1997, the limited partnership was liquidated as part of a reorganization and Cignal was incorporated in the state of Delaware. Dr. Gerzof executed a subscription agreement by which he agreed to purchase 270,000 shares of Cignal stock, which he believed to represent his 3% ownership interest.
On the same day that Dr. Gerzof became a stockholder, Cignal granted pre-emptive rights to future issuances of Cignal securities to all stockholders, except for Dr. Gerzof. Shortly thereafter, Cignal granted certain stockholders options as finders’ fees for introducing investors to Spencer Trask but granted no such rights to Dr. Gerzof. Cignal also granted certain stockholders registration rights granting those stockholders the. opportunity to sell their shares with sales by Cignal in a public offering.
As a consequence of subsequent investments in Cignal and the resulting issuance of additional stock, Dr. Gerzofs 270,000 shares currently represent less than 3% of Cignal. On or about April 27, 2000 Cignal informed Dr. Gerzof that the shares which he had received represented only 0.84% of Cignal.
DISCUSSION
Under Mass.R.Civ.P. 15(a) a party may amend his pleading only by leave of the court, and “leave shall be freely given when justice so requires.” See Mass.R.Civ.P. 15(a). The opposing party bears the burden of establishing a “good reason” to deny the amendment. See DiGregorio v. Commonwealth, 10 Mass.App.Ct. 861, 862 (1980). The court should deny a motion for leave to amend a complaint when the amendment would be futile. See Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991). In the present case, the defendants contend that Dr. Gerzofs motion to amend the complaint to add claims alleging breach of fiduciaiy duty and violation of M.G.L.chapter 93A in the sale of a security is futile and should be denied because (1) corporations do not owe fiduciary *430 duties as a matter of Delaware law; and (2) claims between partners, shareholders, and co-venturers are excluded from Chapter 93A liability.
I. Breach of Fiduciary Duty Breach of Fiduciary Duty v. Perlman
The defendants concede that Perlman, in his role as President of Cignal, may be held potentially liable for breach of fiduciary duty. However, they argue that the court should deny Dr. Gerzofs motion to amend the complaint to add a breach of fiduciary duty claim because Cignal and Perlman will suffer prejudice. Specifically, Cignal and Perlman contend that because Dr. Gerzofs proposed claims involve allegations that do not arise from the same facts and circumstances as the original claims, additional discovery will be required, including interrogatories, document requests, and depositions. Furthermore, defendants claim that if the proposed amendment is allowed, Perlman may be forced to assert third-party claims for contribution against other officers and directors, who in turn would insist that all discovery be reprised and all deadlines extended.
The court is not persuaded that delay would be significant because the present claim of negligent misrepresentation is closely aligned with a claim for breach of fiduciary duty. Furthermore, at oral argument defense counsel advised that a corporate indemnification agreement exists for the benefit of the officers and directors of Cignal, and thus, there does not appear to be adequate prejudice.[3] In the event that third parties are impleaded, a motion may be filed to extend discovery.
Accordingly, Dr. Gerzofs amended complaint alleging breach of fiduciary duty against Perlman does not seriously prejudice the defendants, and Dr. Gerzofs motion to amend as to the foregoing claim is ALLOWED. It is further ORDERED that:
The defendants may reopen the depositions of Dr. Gerzof and Mrs. Gerzof for one day each unless the plaintiff is willing to stipulate that Dr. Gerzof and Mrs. Gerzof will not come forward at trial with any substantive evidence over and beyond what has already been testified to at their depositions. If such a stipulation is reached, the continued depositions of both Dr. Gerzof and Mrs. Gerzof are each limited to two hours.
Breach of Fiduciary Duty v. Cignal
Cignal argues that Dr. Gerzofs motion to amend to add a claim for breach of fiduciary duty against Cignal is futile because under Delaware law, which governs the contract here, corporations do not owe fiduciary duties to shareholders. Cignal relies on the general rule in Beacon Wool Corp. v. Johnson, 331 Mass. 274, 279 (1954), which held that a Massachusetts court should look to the law of the state of incorporation to determine the liability of corporate directors. Dr. Gerzof contends that Massachusetts law governs his breach of fiduciary duty claim, and that under Massachusetts law, a plaintiff may assert a breach of fiduciary duty claim against a corporate entity. Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 511 (1997).
In Demoulas, the Supreme Judicial Court departed from the general rule of Beacon Wool because the entity at issue in Demoulas had originally been formed as a Delaware corporation and later merged into a Massachusetts corporation. See Demoulas, 424 Mass. at 511. Finding that the alleged wrongful conduct had spanned a number of years during both periods of incorporation, the Court employed a functional approach to resolve the choice of law issues. See id. Rather than applying two different sets of state laws to the activities of the corporation, which the Court considered a “cumbersome and unnecessarily formalistic exercise!,]” the Court concluded that the corporation’s “significant relationship” with Massachusetts made appropriate the application of Massachusetts law. See id.
In Harrison v. Netcentric Corp., 433 Mass. 465, 470 (2001), however, the Supreme Judicial Court recently affirmed that the state of incorporation dictates the choice of law regarding the internal affairs of a corporation, including the fiduciary duty owed to shareholders. The Court explained that its departure from the general rule in Demoulas, was warranted because ”[t]he Demoulas case was an exceptional one, as it concerned a company that had changed its State of incorporation as well as conduct that spanned both periods; thus, we conducted a functional analysis to determine which State had the more significant contacts.” Id. at 471. The Court also clarified that “nothing in [the Demoulas] decision, however, suggested that we were overruling our long-standing policy of applying the law of the State of incorporation to internal corporate affairs.” Id. at 471.
In the case at hand, there is nothing to suggest that this court should depart from Beacon Wool's general rule that the law of the state of incorporation governs. Unlike the unique circumstances in Demoulas, all of the wrongs alleged to have been breaches of fiduciary duty occurred while Cignal was a Delaware corporation. Specifically, Dr. Gerzof alleges that Cignal granted pre-emptive rights to future issuances of Cignal securities to all stockholders except for the plaintiff. Shortly thereafter, Cignal granted certain stockholders options as finders’ fees for introducing investors to Spencer Trask but granted no such rights to Dr. Gerzof. Dr. Gerzof further alleges that Cignal also granted certain stockholders registration rights giving those stockholders the right to sell their shares with sales by Cigna1 in a public offering. Dr. Gerzof finally alleges that Cignal did not apprise him of notice of both proposed and actual actions by stockholders and directors. Because the breach of fiduciary duty claim arises from alleged actions and/or omissions *431 concerning treatment of Cignal stockholders, all of these alleged wrongs must have occurred after Cignal was incorporated in Delaware.
Under Delaware law, a corporate entity does not owe a fiduciary duty to shareholders. Arnold v. Society for Sav. Bancorp, Inc., 1995 WL 376919 *8 (Del.Ch. 1995), aff'd, 678 A.2d 533, 539 (Del. 1996). Accordingly, Dr. Gerzofs amended complaint alleging breach of fiduciary duty against Cignal does not state a claim upon which relief may be granted, and Dr. Gerzofs motion to amend as to the foregoing claim is DENIED.
II. Violation of G.L. chapter 93A in the Sale of a Security
The defendants argue that Dr. Gerzofs proposed Chapter 93A claim is futile because disputes between or among partners, shareholders, and co-venturers are not subject to the provisions of Chapter 93A. Dr. Gerzof argues that his claims are actionable under Chapter 93A since Chapter 93A specifically encompasses unfair and deceptive acts or practices in the sale of a security.
Chapter 93A gives a private right of action to any person injured by “an unfair or deceptive act or practice” in trade or commerce “directly or indirectly affecting the people of this Commonwealth.” Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 760 (1st Cir. 1997). In Ansin, the investors of a close corporation sued the corporation and two of its officers alleging that they were fraudulently induced to sell their shares before a successful initial public offering, and that the officers violated contractual terms of their stock subscription agreement by causing an unauthorized transfer of some of the investors’ shares. See Ansin, 105 F.3d at 748. The plaintiffs claimed that the defendants’ actions constituted an unfair or deceptive business practice within the meaning of G.L.chapter 93A. See id. at 759. The Court relied on Szalla v. Locke, 421 Mass. 448, 451-52 (1995), and particularly Zimmerman v. Bogoff, 402 Mass. 650, 663 (1988), to require an independent analysis of whether the transaction involved had a public aspect, even where the subject matter of the transaction is included in the definitional section of the statute. See id. at 760. The Court found that the events had not transpired in a public market setting because the suit was largely premised on the defendant’s status as a close corporation. See id. at 761. “Guided by the Massachusetts precedents, we find that this dispute amongst shareholders of a close corporation does not meet the jurisdictional ‘trade or commerce’ requirement of Mass. Gen. Laws ch. 93A.” Id.
In Szalla, the Supreme Judicial Court held that disputes between partners and shareholders do not meet the statute’s jurisdictional “trade or commerce” requirement. See Szalla, 421 Mass. at 451. In offering examples of the types of disputes not subject to the provisions of Chapter 93A, Szalla cited Zimmerman for the principle that “c. 93A [is] inapplicable to transactions and disputes between parties to [a] joint venture and fellow shareholders in a close corporation.” See Zimmerman, 402 Mass. at 663. The Court also relied upon Riseman v. Orion Research, Inc., 394 Mass. 311, 313-14 (1985), for the principle that “c. 93A [is] inapplicable to claims by [a] corporate stockholder against [a] corporation stemming from [a] dispute as to [the] internal governance of [the] corporation.”
Previously, in 1985, the Supreme Judicial Court held that G.L.chapter 93A did not apply to the sale of securities. In so doing, the Court reasoned that the Legislature had enacted the Uniform Securities Act as a comprehensive regulatory scheme for the registration and sale of securities, including prohibition of fraudulent practices and the granting of a right of action. See Cabot Corp. v. Baddour, 394 Mass. 720, 725-26 (1985). Although the Massachusetts Legislature amended in 1988 the definition of “trade and commerce” to include claims involving securities transactions, the courts have held that the amendment did not alter the scheme of Chapter 93A which was intended to govern commercial transactions and not private disputes. See Wells v. Monarch Capital Corp., 1991 WL 354938 *13 (D.Mass. 1991). The development of Chapter 93A suggests that the unfair or deceptive acts or practices prohibited by the statute are those that arise in dealings conducted at arm’s length and not those that are principally private in nature. See Ansin, 105 F.3d at 760.
The transaction at issue here is principally a private grievance between Dr. Gerzof and the defendants. The relationship between Dr. Gerzof and Perlman dates back more than ten years,[4] and Dr. Gerzofs involvement with Cignal dates back to the formation of the partnership. Dr. Gerzof personally funded Perlman’s initial attempts at starting the partnership in July 1995.[5] Dr. Gerzof was involved in discussions with Perlman, as often as several times a week, regarding Cignal’s progress and business plan. Furthermore, Dr. Gerzof assisted Perlman in identifying and connecting with potential, and eventually actual, investors. There is no suggestion that Dr. Gerzofs involvement with Cignal or Perlman could have or did transpire in an arm’s length or public market setting. Thus, the association between Dr. Gerzof and Perlman is not the kind of commercial transaction regulated by the statute. Any unfair or deceptive acts thus occurred in the context of the parties’ private relationship and not in an arm’s length commercial transaction.
Dr. Gerzofs reliance on Reisman v. KPMG Peat Marwick LLP, 965 F.Sup. 165, 167 (D.Mass. 1997), is without merit. Reisman did not involve a Chapter 93A claim between co-venturers, partners, or shareholders. See Reisman, 965 F.Sup. at 167. Rather, the case involved a Chapter 93A claim brought by former shareholders against the accountants of the corporation who had allegedly certified fraudulent and misleading financial statements upon which the plaintiffs *432 relied in making their investment. See id. at 168. Unlike Dr. Gerzof, the plaintiff shareholders in Reisman did not seek redress under Chapter 93A against the corporation or other shareholders. See id. at 167. In Reisman, the court found that the accountants were engaged in "trade or commerce” as defined by the statute because they provided accounting services in a business context for which they received compensation. See id. at 175. Unlike Dr. Gerzof and the defendants , a public accounting firm, such as the defendant in Reisman, assumes a public responsibility to creditors, shareholders, and the general investing public when it certifies public reports and a company’s financial status. See United States v. Arthur Young, 465 U.S. 805, 817-18 (1984). The transaction involved in the case at hand is lacking such a public market setting.
Accordingly, Dr. Gerzof s amended complaint alleging violations of G.L.chapter 93A in the sale of a security does not state a claim upon which relief may be granted, and Dr. Gerzofs motion to amend as to the foregoing claim is DENIED.
ORDER
For the foregoing reasons, the plaintiffs motion to amend the Complaint to add Count V, alleging violations of G.L.chapter 93A is DENIED, to add Count VI alleging breach of fiduciary duty against Perlman is ALLOWED, and to add Count VI alleging breach of fiduciary duty against Cignal is DENIED.

 In the event that Cignal received a Letter of Intent for another round of funding in the amount of at least $ 1,000,000 within four weeks of signing the agreement with Dr. Gerzof, his interest could he diluted to 1.75%.

 Moreover, Perlman did not file any third-party claims in response to Dr. Gerzofs original claim alleging negligent misrepresentation; therefore, the court is not persuaded that he will be sufficiently prejudiced.

 Dr. Gerzof testified in his deposition that Perlman has been a good friend of his son’s since the time they were thirteen or fifteen years of age. Dr. Gerzof described his relationship with Perlman as one of a father figure, supporter, friend, and confidante.

 Dr. Gerzof gave Perlman $5,000 to travel to Taiwan.