NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1200

RICHARD KIRBY & another[1]

vs.

JOHN J. MOUSIS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Richard Kirby and Pondview Investments, LLC (PVI), brought this action alleging that the defendants, John J. Mousis and his newly-formed company, Pondview Vending, Inc. (PVV), improperly cut the plaintiffs out of a business arrangement to purchase and operate gaming terminals in the Commonwealth of Pennsylvania. The defendants asserted counterclaims against Kirby alleging that Mousis had no obligation to include PVI in the arrangement because Kirby misrepresented his ability to raise funds for the venture, Kirby's involvement was conditioned on his ability to raise $1

----

[1] Pondview Investments, LLC.

[2] Pondview Vending, Inc.

million, and Kirby failed to raise that required amount. After a bench trial, a Superior Court judge found in favor of the plaintiffs on their claim for unjust enrichment and ordered the defendants to pay $60,000 in damages. The judge found that the plaintiffs did not prevail on their remaining claims nor did the defendants on their counterclaims.

On appeal, the plaintiffs argue that the judge's findings that Mousis did not owe a fiduciary duty to PVI and that the plaintiffs' involvement in the business arrangement was subject to a condition precedent (i.e., raising $1 million) were clear error. In their cross appeal, the defendants argue that the plaintiffs were not entitled to recover on their unjust enrichment claim and that the defendants should have prevailed on their fraud counterclaim. We affirm.

Background. 1. Facts. We summarize the facts found by the judge, supplemented by undisputed parts of the record. We reserve further recitation of the facts for our discussion.

Kirby and Mousis met at a stock investment meeting in 2012. At the time, Mousis and a business associate, Michael Palermo, were involved in the "skill-based" gaming business.[3] As part of that business, Mousis and Palmero purchased gaming terminals and

_____

[3] In their brief, the plaintiffs explained that "skill-based" games include electronic poker and backgammon machines, as opposed to "chance" games.

2

software from Gracie Technologies (Gracie), a company headquartered in South Carolina that had a "strong business relationship" with Mousis. The terminals then were placed in establishments like bars and social clubs. Customers would deposit money into the terminals and play games that paid out to winners. Gracie tabulated the revenue generated by the terminals through a backend accounting system and then made payments to distributors, like Mousis and Palmero, based on those calculations. The business required significant capital to purchase the terminals and software, and to retain attorneys to stay abreast of State legislation that affected the business.

At their initial meeting and thereafter, Kirby told Mousis that he was a highly successful businessperson who was knowledgeable about the gaming industry and had access to significant investment capital. Mousis and Kirby remained in touch, but Mousis and Palmero continued to expand their gaming business without Kirby. Specifically, between 2013 and 2016, Mousis and Palmero formed three companies, Nebraska Vending LLC, M&M Vending, and QP Industries, to run gaming businesses in Nebraska, Florida, and Pennsylvania.

Meanwhile, in 2013, Kirby told Mousis about the Solgen Energy project, an investment opportunity to construct a power plant for the Jamaican government; Mousis declined the

3

opportunity but introduced Kirby to potential investors. This project ultimately failed, and the people referred to the business by Mousis lost their investments.

Eventually, Mousis advised Kirby of an opportunity to purchase equity from existing investors in Nebraska Vending. Later, Mousis proposed that Kirby raise funds to purchase equity from existing investors in QP Industries, Mousis's company that operated in Pennsylvania. In May 2016, Kirby formed PVI, a Delaware limited liability company, for the purpose of accepting investors for the gaming business. Kirby was unable to open a bank account for PVI due to State and Federal tax issues, so Mousis opened the account. Kirby represented to Mousis that he could raise significant capital, "claimed funding was on the horizon, and even showed Mousis promising communications with investors who claimed they were ready to invest from $1 to $1.5 million in the Pennsylvania opportunity." Mousis agreed that if Kirby was successful in raising $1 million,[4] Mousis would give Kirby a thirty percent interest in PVV, an entity not yet formed for the purposes of expanding Mousis's gaming business in Pennsylvania.

---

[4] The judge's decision also references Kirby's ability to raise $1.5 million in capital. We use the $1 million figure because Mousis testified that Kirby was required to raise $1 million to operate in the Pennsylvania market and $1.5 million for the Nebraska market.

4

In 2017, Kirby raised $184,000 for PVI and fell far short of meeting the condition that he raise $1 million. Much or all of the $184,000 "came from funds that had been previously committed to the failed Solgen project and then diverted to PVI." Kirby depleted the capital from the PVI account, using most of the funds for personal and business expenses. Mousis also advanced money to Kirby to pay for personal and business expenses throughout their relationship. However, in mid-2017, PVI made wire transfers totaling $70,000 to Gracie. That money was used to pay off Mousis's prior debts incurred through his Nebraska business "[i]n an effort to pave the way for a future deal with Gracie." Mousis repaid $10,000 of this money.

In December 2017, Mousis and Kirby traveled to South Carolina to discuss two potential deals -- purchasing the Pennsylvania market and buying out Gracie's entire business. That month, a sales agreement between PVV and Gracie for the Pennsylvania deal was drafted and signed by Kirby but not executed by Gracie. The following month, in January 2018, Mousis as "Vice-President" of PVI executed a letter agreement to purchase 270 gaming terminals in Pennsylvania from Gracie (January 2018 agreement).[5] That agreement set a schedule for PVI

_____

[5] Although the judge found the January 2018 agreement was between PVV and Gracie, the record reflects that the agreement was signed by Mousis on behalf of PVI.

to pay Gracie $270,000 between February 1 and March 15, 2018, with the remaining balance of $164,500 to be paid over the course of the following year. PVI almost immediately failed to make the scheduled payments. As a result, Gracie terminated the agreement.

Given Kirby's failure to raise $1 million, Mousis decided to move forward with the deal without Kirby. In March 2018, Mousis and Kirby again traveled to South Carolina. At the time, Kirby was attempting to negotiate a deal to purchase Gracie for $6 million, although he ultimately was unable to raise the necessary funds to do so. Following that trip, on March 15, 2018, Mousis as president of PVV executed a new letter agreement to purchase 270 gaming terminals in Pennsylvania from Gracie (March 2018 agreement). Five days later, Mousis created PVV and incorporated the company in New Hampshire.[6] PVI and Kirby had no equity stake in PVV and were not entitled to cash distributions, revenues, or profits generated by PVV. Nonetheless, Kirby made false claims to Gracie that he owned a fifty percent interest in PVV, causing Gracie to withhold $10,000 in payments owed to PVV. PVV ultimately earned significant revenue through its deal with Gracie.

---

[6] The judge made no specific finding about when PVV was created, but the articles of incorporation entered in evidence reflect the date of incorporation as March 20, 2018.

2. _Procedural history_. Kirby and PVI brought this action against Mousis and PVV, alleging breach of fiduciary duty, usurping a corporate opportunity, fraud, a violation of G. L. c. 93A, § 11, and unjust enrichment, and seeking to pierce the corporate veil. The defendants asserted counterclaims against Kirby for fraud, interference with business relations, defamation, and conversion.

The matter proceeded to a bench trial. At the close of trial, the judge entered a directed verdict on the defendants' counterclaims for defamation and conversion. The judge subsequently issued written findings of fact and rulings of law.

The judge found in favor of the defendants on the plaintiffs' claims for breach of fiduciary duty, usurping a corporate opportunity, fraud, and violation of G. L. c. 93A. Specifically, the judge concluded that Mousis did not owe a fiduciary duty to PVI because Mousis did not have an official position as "an owner, partner, on the board of directors or an officer of that company." The judge also found that Kirby's involvement in the Pennsylvania deal was conditioned on his ability to raise $1 million in capital and he "fell far short of that condition precedent required to trigger [an] equity position in PVV." On the plaintiffs' unjust enrichment claim, the judge found Mousis and PVV jointly and severally liable for

7

$60,000 that Mousis used from PVI's funds to pay down debt owed to Gracie for Mousis's Nebraska business. As to the defendants' fraud counterclaim, the judge found that the defendants failed to prove damages arising from Kirby's "materially false misrepresentations to Mousis about [Kirby's] ability to raise capital to fund business ventures." The judge also found the defendants failed to prove their interference with business relationships counterclaim. Judgment, as amended, entered and these cross appeals followed.

Discussion. 1. Standard of review. "Where a judge makes findings of fact in a bench trial, we review them for clear error." H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022). "A trial judge's finding is clearly erroneous only when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id., quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509 (1997) (Demoulas I), S.C., 428 Mass. 543 (1998), and S.C., 432 Mass. 43 (2000). We review the trial judge's legal conclusions de novo. See H1 Lincoln, Inc., supra.

2. Breach of fiduciary duty claim. The plaintiffs claim that the judge's finding that Mousis did not owe a fiduciary duty to PVI was clear error. The plaintiffs also argue that

8

Mousis was in breach of that duty when he entered into the March 2018 agreement on behalf of PVV, excluding PVI from the deal with Gracie.

a. Duty. "Directors of a corporation stand in a fiduciary relationship to that corporation." Estate of Moulton v. Puopolo, 467 Mass. 478, 492 (2014). Here, the judge found that Mousis did not owe a fiduciary duty to PVI because he did not hold an official position like owner, partner, director, or officer. However, on this point, Mousis testified that he was the chief operating officer, a director, and a managing member of PVI. The plaintiffs also presented other evidence supporting their position that Mousis was an officer or director such as the statement of authorized person that accompanied PVI's certificate of formation listing Kirby and Mousis as managing members of PVI. Mousis also signed the January 2018 agreement with Gracie on behalf of PVI as its vice president and was the sole signatory on PVI's bank account. We recognize that some evidence also was presented that Mousis was not an officer of PVI, including a document from the Federal Internal Revenue Service (IRS) addressed to Kirby as the sole member (owner) of PVI as Kirby had reported to the IRS in his request for PVI's EIN. However, given Mousis's own testimony about his role in

9

PVI, the finding that Mousis did not owe a fiduciary duty whatsoever to PVI was clear error.

b. Breach. Directors and officers of a close corporation owe a duty of the "utmost good faith and loyalty" (citation omitted). Zimmerman v. Bogoff, 402 Mass. 650, 657 (1988). That duty prohibits a fiduciary "from taking, for personal benefit, an opportunity or advantage that belongs to the corporation." Demoulas I, 424 Mass. at 529. "A director or officer is not entirely barred from pursuing a corporate opportunity," id. at 530, but "must first disclose material details of the venture to the corporation, and then either receive the assent of disinterested directors or shareholders, or otherwise prove that the decision is fair to the corporation." Id. at 533.

Here, the judge found that Mousis was not in breach of any duty or contractual obligation to involve Kirby or PVI in the Pennsylvania deal with Gracie after Mousis gave Kirby the opportunity to participate, Kirby falsely represented his ability to raise capital (a condition precedent to Kirby's participation), and Kirby failed to raise the promised funds leading Gracie to terminate the January 2018 agreement for nonperformance. Those findings are not erroneous.

The plaintiffs argue, in essence, that after Gracie terminated the January 2018 agreement with PVI, Mousis had an

10

ongoing obligation to disclose that he was pursuing the opportunity for himself and PVV in March 2018.  In support, the plaintiffs note that Kirby traveled with Mousis to South Carolina shortly before the March 2018 agreement was executed and Mousis did not tell Kirby about that agreement.[7]

The plaintiffs' reliance on Mousis's conduct after the January 2018 agreement was terminated fails.  The judge found that the plaintiffs only were entitled to participate in the deal if Kirby raised $1 million and he failed to do so.  Given this agreed on and unmet condition precedent, Mousis's fiduciary duty to PVI with respect to the Pennsylvania deal had not yet arisen and there was no breach thereof.  See Fronk v. Fowler, 456 Mass. 317, 331-332 (2010) (duties of members of closely held business may be limited by agreement); Butts v. Freedman, 96 Mass. App. Ct. 827, 829-830 (2020) (same).  Cf. Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass. App. Ct. 282, 292 (2012) ("Parties to a fiduciary relationship may agree to alter or limit to some degree their fiduciary rights and obligations").

Although the plaintiffs challenge the judge's finding regarding the $1 million requirement, there was ample evidence

_____

[7] At that time of the trip, Kirby was attempting to buy all of Gracie and also continued to represent that he could raise money for PVI.

11

to support it, including Mousis's testimony on the issue and two unsigned memorandums of understanding from November and December 2017 (MOUs).  Those MOUs concerned the "new Pennsylvania gaming venture" between Mousis, Palmero, and PVI, and stated that in consideration for a thirty percent ownership interest in PVV, PVI would "make an initial cash contribution" of $1 million to PVV.  Both MOUs included a line for Paul Chapman's signature on behalf of PVI; Chapman was Kirby's investor who represented that he had $1 million for the Pennsylvania deal.  Mousis testified that he sent the first MOU to Kirby, and the judge was free to credit the unsigned MOUs as evidence of the discussions between Mousis and Kirby about PVI's involvement in the Pennsylvania deal and PVV.

The plaintiffs also claim that the judge failed to credit the evidence that PVV was not formed until after the March 2018 agreement was executed.  Regardless of when PVV was incorporated, ample evidence was presented that the parties contemplated the formation of PVV as the entity to operate in the Pennsylvania market well before the execution of the March 2018 agreement.  That evidence included the November and December 2017 MOUs and a December 2017 agreement between PVV and Gracie that was not fully executed but was signed by Kirby.  Mousis also testified, "[PVV] would always be the operating

12

entity for any final agreement and deal in Pennsylvania. [PVI] was to be able to raise capital to fund the deal, and [PVI] would have an interest in [PVV]." Most importantly, the judge made findings to this effect, including that PVV was the entity that Mousis formed to "further expan[d] into the skill based gaming business in Pennsylvania" and that Kirby's participation in PVV was conditioned on his ability to successfully raise $1 million.

Notwithstanding our conclusion that the parties' agreement governed the relationship between Mousis and Kirby until Kirby raised the requisite funds, Mousis demonstrated that even if he owed a fiduciary duty to PVI with respect to the Pennsylvania deal, he did not breach that duty. The judge's findings demonstrate that Mousis gave PVI the opportunity to work in the Pennsylvania market, but PVI tried and failed to take advantage of it due to a lack of capital. See Demoulas I, 424 Mass. at 532 ("opportunities must be presented to the corporation without regard to possible impediments, and material facts must be fully disclosed, so that the corporation may consider whether and how to address these obstacles"). Cf. Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 178 (1992) (considering whether corporation was "financially unable to exploit the opportunity," "the party offering the opportunity refused to deal with the

13

corporation," or "the corporation sought without success to obtain [the opportunity]" [citation omitted]).  Mousis also demonstrated that the March 2018 agreement was fair and did not result in harm to PVI.  PVI remained unable to pursue the opportunity because it did not raise the amount necessary to satisfy the terms of either the January or the March 2018 agreement, let alone the promised $1 million.[8]  See Demoulas I, supra at 534 (existence of impediments to deal relevant to determining fairness of fiduciary's action).  As the judge found, "Mousis was able to keep this project going based upon his long-term relationship and despite Kirby's ineffective and hollow promises to raise capital."  Accordingly, judgment properly entered for the defendants on this claim.[9]

    c.  Related claims.  The plaintiffs also claim that the erroneous finding on the fiduciary duty issue affected the

---

[8] Both agreements required payment for the gaming terminals as well as preexisting debt owed by Mousis's other companies. The price just for the 270 gaming terminals was $210,000 under the terms of both agreements, and the judge found that Kirby raised $184,000 in capital.

[9] To the extent the plaintiffs argue that Mousis was in breach of his fiduciary duty by using $60,0000 in furtherance of the March 2018 agreement, that claim is duplicative of the damages ordered on the unjust enrichment claim and we affirm that portion of the judgment for the reasons stated below.  See Zimmerman, 402 Mass. at 661 (remedy for breach of fiduciary duty is to restore party "as nearly as possible [to] the position he would have been in had there been no wrongdoing").

judge's analysis on their claims for usurping a corporate opportunity, fraud, and a violation of G. L. c. 93A. However, the plaintiffs' failure to meet the condition precedent precludes their recovery under such claims.

Any claim for usurping a corporate opportunity fails for the reasons stated above.[10] The plaintiffs also did not establish fraud through Mousis's nondisclosure of the March 2018 agreement because Mousis did not have a duty to disclose his continued interest in the Pennsylvania deal after Kirby failed to raise the requisite funds to obtain an equity share in PVV (and PVI defaulted on the January 2018 agreement). Contrast Rood v. Newberg, 48 Mass. App. Ct. 185, 192 (1999) (nondisclosure may amount to fraud if fiduciary is under duty to other party to "exercise reasonable care to disclose the matter in question" [citation omitted]). Finally, the plaintiffs failed to establish that the defendants' conduct was unfair or deceptive within the meaning of c. 93A, where Kirby falsely told Mousis he was able to raise $1 million, knew that he could not raise the promised capital, and agreed that his involvement in the Pennsylvania deal hinged on his ability to do so. See UBS

---

[10] To the extent that claim is for intentional interference with advantageous business relations, the plaintiffs did not show "an even probable future business relationship from which there is a reasonable expectancy of financial benefit." Owen v. Williams, 322 Mass. 356, 361-362 (1948).

15

Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 412-413 (2019) (court may consider what the parties knew or should have known when determining whether conduct is unfair under c. 93A).

3. Unjust enrichment claim. On cross appeal, the defendants claim that the judge erred in awarding $60,000 to the plaintiffs based on funds PVI paid to Gracie because "[t]he record establishes that Kirby misused PVI funds . . . , and that Mousis used the funds in furtherance of shared business goals."[11] In order to recover for unjust enrichment, the plaintiffs were required to prove that "(1) [they] conferred a measurable benefit upon the defendant[s]; (2) [they] reasonably expected compensation from the defendant[s]; and (3) the defendant[s] accepted the benefit with the knowledge, actual or chargeable, of the [plaintiffs'] reasonable expectation." Stewart Title Guar. Co. v. Kelly, 97 Mass. App. Ct. 325, 335 (2020).

On the issue of PVI's expenditures, we note that the plaintiffs produced at trial a chalk summarizing the money raised and spent by PVI, but the chalk is not in the record before us. Beyond the PVI bank records, it also appears that

---

[11] Our review of the defendants' arguments on cross appeal is hindered by the fact that the defendants largely cited to the judge's findings but not the underlying evidence in the record in their brief. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) (appellate brief shall include argument "with citations to the authorities and parts of the record on which the appellant relies").

16

neither Mousis or Kirby kept records of business contributions (or the sources thereof) or expenditures for PVI, nor did Mousis keep records of funds given to Kirby for his personal use, used to pay off Kirby's loans, or used by or provided to PVI from Mousis's other businesses. Nonetheless, the judge found that Mousis used $70,000 of PVI funds "in mid 2017 to payoff prior debt he had incurred in Nebraska with Gracie . . . [and that] Mousis repaid $10,000 of this money to Kirby from Nebraska funds."

At trial, Mousis testified that the money in the PVI account was raised by Kirby. The PVI bank records reflect two wire transfers totaling $70,000 made to Gracie in May and June 2017. That money was sent in furtherance of Mousis's Nebraska business's deal with Gracie. In January 2018, a check for $70,000 from one of Mousis's other businesses, M&M, was deposited in the PVI account. Mousis testified at trial that $60,000 of that money went to Gracie (as is reflected as a subsequent January 2018 wire transfer to Gracie on PVI's bank statement) and $10,000 went to Kirby because Kirby "said he needed it to finish off his funding." Mousis also was impeached at trial with his prior deposition testimony that Kirby's money contributed to the Pennsylvania deal and Mousis did not return the money because it was owed to him for repaying Kirby's debts.

17

Based on this evidence, we discern no error in the judge's finding as to the $60,000 figure.[12]

As to the defendants' argument that the plaintiffs were not entitled to equitable relief, the judge found that Kirby incurred over $40,000 in debt with Mousis's friends and Mousis paid back as much as he could; however, Mousis did not present any documentation of those loans or repayments. Applying equitable principles, the judge did not abuse his discretion in determining that the defendants should not be entitled to keep money raised by Kirby that was used to further business deals to which Kirby and PVI were not parties, and in failing to credit payments made by Mousis on Kirby's loans where no documentation was presented of same. See Cavadi v. DeYeso, 458 Mass. 615, 624 (2011) (judge's imposition of equitable remedies reviewed for abuse of discretion).

4. Fraud counterclaim. The defendants also claim that the judge erred in finding that they failed to prove damages resulting from Kirby's false representations. The defendants

_____

[12] As the plaintiffs note, two wire transfers totaling $30,000 were made from the PVI account to Gracie in mid-February 2018, but the plaintiffs do not argue that this amount should have been included in the damages awarded to them. The judge made no findings about the purpose of those payments including whether they were paid in furtherance of the January 2018 agreement or whether the money was advanced as part of Kirby's February 2018 "side deal" to buy out Gracie for $6 million. In any event, any argument about those payments is waived.

18

contend that they were harmed because Mousis covered "substantial operating costs for PVI" and Kirby's conduct caused "delayed progress, lost opportunities, and misapplied funds." Although the judge found that Mousis advanced Kirby money for personal and business expenses based on Kirby's false representations about his ability to raise capital, "[t]he extent of the injury for which a [party] seeks compensation must be proved with a fair degree of certainty." Pearl v. William Filene's Sons Co., 317 Mass. 529, 532 (1945).  It was the defendants' burden to prove damages.  See National Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 491 (1945).  On the record before us, we cannot say that the judge erred in finding that the defendants' failed to prove damages flowing from Kirby's misrepresentations, particularly where Mousis ultimately was able to proceed with the Pennsylvania deal resulting in "significant revenues" for PVV and Mousis did not produce.

Amended judgment affirmed.

By the Court (Meade,
  Desmond & Wood, JJ.[13]),

Clerk

Entered:  January 22, 2026.

---

[13] The panelists are listed in order of seniority.

19