Schaeffer *v.* Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.

ARLINE SCHAEFFER *vs.* COHEN, ROSENTHAL, PRICE, MIRKIN, JENNINGS & BERG, P.C., & others.[1]

Hampden.  May 4, 1989. — August 7, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Standing, Jury issues. *Corporation*, Stockholder, Close corporation. *Fiduciary. Attorney at Law*, Attorney-client relationship.

A former stockholder of a closely held corporation lacked standing to assert claims against a law firm and two of its members that they improperly received funds from the corporation for representing the interests of another of the corporation's stockholders and that they improperly assisted that stockholder in diverting funds from the corporation for his personal use, as those claims were properly asserted only through a derivative action brought on behalf of the corporation. [513]

Judgment on certain claims in a civil action as to which no jury demand was made was properly entered for the defendants in accordance with Mass. R. Civ. P. 49 (a). [513-514]

A former stockholder in a closely held corporation lacked standing to maintain a claim under G. L. c. 93A, § 11, for losses that were sustained solely by the corporation. [514]

CIVIL ACTION commenced in the Superior Court Department on December 2, 1983.

The case was tried before *John F. Moriarty*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard M. Howland* for the plaintiff.

*Edward L. Donnellan* for the defendants.

O'CONNOR, J. The complaint alleges that the defendant law firm, Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., and two members of that firm were negligent in providing the plaintiff with legal services, violated a contract to represent her legal interest, violated fiduciary duties they owed her as

---

[1] Irving M. Cohen and Arthur W. Price.

a fifty per cent shareholder of Paragon Rubber Corporation (Paragon), a closely held corporation, and violated G. L. c. 93A (1986 ed.). The gist of the complaint is that the defendants concurrently represented the conflicting interests of Paragon and Emanuel Gross (Gross), Paragon's other fifty per cent shareholder, to the detriment of the plaintiff's interests, that they accepted fees from Paragon for services rendered to Gross in opposition to the plaintiff, that they failed to disclose to the plaintiff facts that were material to her interests, and that they helped Gross in his attempts to "squeeze out" the plaintiff from Paragon.

After trial, and following the judge's denial of the defendants' directed verdict motions, the judge submitted a series of questions relative to the plaintiff's common law claims to the jury for their special verdicts under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). There is no indication in the record that the plaintiff objected to the questions as inaccurately reflecting her claims, and she does not make that assertion on appeal. The questions and the jury's answers were as follows: "(1) Did the law firm of Cohen, Rosenthal, Price, Mirkin, Jennings and Berg, P.C. undertake or continue to simultaneously represent both the defendant Emanuel Gross and Paragon Rubber Corporation in a derivative action brought against them by the plaintiff, Arline Schaeffer, when it knew or should have known that such multiple employment would be likely to involve it in representing differing interests?" The jury answered, "yes." "(2) If the answer to Question (1) is YES, did said law firm accept compensation from Paragon Rubber Corporation for legal services performed by it in the defense of that civil action when it knew or should have known that such multiple employment would be likely to involve it in representing differing interests?" The jury again answered, "yes." "(3) If the answer to Question (2) is YES, what was the amount of such compensation?" The jury found that the amount of compensation obtained was $63,074. "(4) In any matters or controversies in which the defendants represented Paragon Rubber Corporation, did the defendants fail to represent Paragon Rubber Company in accordance with good legal practice? The jury's answer

was, "yes." "(5) If the answer to Question (4) is YES, was such failure on the part of the defendants a proximate cause of any financial loss by Paragon Rubber Corporation?" Again, the jury answered, "yes." "(6) If the answer to Question (5) is YES, what was the amount of such financial loss?" The jury found $77,624 as the amount of the loss Paragon sustained.

Following the special verdicts, the judge considered a motion submitted by the defendants for judgment notwithstanding the verdicts as to the common law claims. He also addressed the factual and legal questions bearing on the G. L. c. 93A claim which had not been submitted to the jury. The judge set forth in a memorandum in considerable detail his findings, rulings, and order for judgment. According to his findings, this case arose out of a controversy between the plaintiff and Gross over the ownership and management of Paragon. Paragon is a closely held Massachusetts corporation founded in order to continue a business begun by the plaintiff's father-in-law, Edward Schaeffer. When Schaeffer died in 1962, he left the business in trust for the plaintiff's late husband and their children. When the plaintiff's husband died, in 1964, the trustees put the business up for sale. Gross, who was then married to the plaintiff's sister, proposed that he and the plaintiff purchase and jointly own the business. Gross offered to contribute $100,000 in cash and to finance the remainder of the price with a mortgage on the business's real estate. He and the plaintiff would have equal ownership of the business and real estate, and the plaintiff would repay him $50,000 out of a salary that the business would pay her.

The plaintiff and Gross enlisted the defendant Irving M. Cohen's legal assistance. Cohen formed Paragon as a corporation to own the non-real estate assets of the business. Fifty per cent of the corporate stock was assigned to the plaintiff, who was named vice president and chairman of the board of directors. The other fifty per cent was assigned to Gross, who was named president and treasurer. The real estate was conveyed to Gross and the plaintiff as tenants in common.

From the outset, Gross managed Paragon's business. The plaintiff was paid a "salary" by the corporation which was

applied against her loan debt, but she did not perform any real services. Cohen represented both the plaintiff and Gross in the formation of Paragon. Gross subsequently retained Cohen as corporate counsel for Paragon without objection by the plaintiff. Cohen also handled Gross's personal legal matters from time to time. Cohen remained friendly with the plaintiff for at least ten years, and also represented her in the sale of her house in 1978.

Some time in the mid-1970's, it was revealed that Gross had been selling scrap metal owned by the corporation and retaining the proceeds. Gross contended that he used the money to pay kickbacks to purchasing agents of Paragon's customers. Gross was indicted for income tax evasion and Paragon also faced difficulties with the Internal Revenue Service. Cohen and his law firm declined to represent Gross and Paragon in this matter because they lacked expertise in the subject. Instead, they referred the matter to another firm. According to the judge's findings, "[Cohen's] lack of expertise, however, did not deter Cohen from accepting a 33⅓% referral fee . . . even though he knew or should have known that the fees were being paid by Paragon. By the time the matter was concluded, that referral fee amounted to $4,850.00."

As a result of the Internal Revenue Service audit, Paragon discontinued paying the plaintiff's salary. In order to replace at least part of her income, the plaintiff and Gross arranged to increase the rent which Paragon was paying on the real estate. After a period of time, however, Gross discontinued rental payments. The plaintiff then retained her own counsel.

According to the judge's findings, "[f]rom at least that point onward, the positions of Gross and the plaintiff with regard to the corporation were adversary and antagonistic. . . . Also from that time onward, however, the plaintiff was at all times represented by her own counsel in all matters pertaining to Paragon. Cohen continued to serve as corporate counsel for Paragon, and he also continued to serve as Gross's personal attorney." For the next several years, the plaintiff and Gross had serious disagreements concerning the payment of dividends and rent. "The parties could agree on little or nothing" concerning Paragon and its affairs.

The judge's findings continue: "A meeting of stockholders and directors was held on June 22, 1981, at the behest of the plaintiff for the purpose of considering a proposed discharge of Gross as president and treasurer of the corporation and a proposed sale of the business. . . . Cohen did not attend that meeting but he sent a member of his law firm, the defendant Arthur W. Price. . . . Price ostensibly attended the meeting as corporate counsel, but, I am convinced, he was there to protect the interests of Gross as well." Price refused to agree to the plaintiff's demand that Gross reveal details of the kickback scheme in which he alleged he had participated. All votes taken at that meeting ended in a tie, and nothing was accomplished.

On February 9, 1982, the plaintiff commenced a shareholder's derivative suit on behalf of Paragon against Gross and another corporate employee alleging that Gross had taken excess salary from Paragon and had otherwise caused corporate assets to be diverted to himself and his family. A member of the defendant law firm filed an appearance on behalf of both Gross and Paragon and an answer on behalf of Gross. In response, the plaintiff's attorney filed, and the court allowed, a motion to require the defendant law firm to withdraw its appearance as either counsel for Gross or for Paragon. "Despite the allowance of that motion, the defendant filed no disappearance on behalf of either Gross or Paragon, and it continued to bill Paragon for all services rendered by it in the derivative action."

On February 14, 1983, according to the findings, while the derivative action was pending, the plaintiff filed a petition for dissolution of Paragon and its wholly owned subsidiary. The defendant law firm appeared on behalf of Gross in opposition to that petition. In September, 1983, counsel for the plaintiff again filed a motion seeking to disqualify the defendant firm from representing both Gross and Paragon in the pending litigation. The defendants vigorously resisted the motion at a hearing, but soon thereafter withdrew as counsel for both Gross and Paragon.

The judge found that the derivative action, the petition for dissolution, and an action commenced by the plaintiff in the

District Court to obtain an accounting of rents from the real estate were settled in January, 1984. By the terms of the settlement, the plaintiff transferred her entire interest in Paragon and the real estate it occupied to Gross in exchange for $1,050,000. The derivative action, the petition for dissolution, and the action for an accounting were dismissed with prejudice pursuant to the parties' stipulation, and the plaintiff and Gross exchanged mutual releases. The plaintiff, however, reserved from her release any causes of action that she might have against Cohen or his law firm. By the time of that settlement, the plaintiff had paid the lawyers who were then representing her $115,000 in fees and expenses. That was in addition to "substantial fees and expenses" she had previously paid to other counsel for services related to the same matter.

Meanwhile, the present action was commenced on December 2, 1983. Originally it was an action on behalf of the plaintiff personally and also a derivative action on behalf of Paragon. After the actions against Gross were settled, however, the plaintiff eliminated from her complaint all derivative claims on behalf of Paragon. After reciting his findings, which we have substantially repeated, the judge in his memorandum turned to the questions raised by the defendants' directed verdict motions and their motion for judgment notwithstanding the verdicts, namely, whether the evidence was sufficient to warrant the jury's special verdicts. See *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978). The judge concluded, correctly, in our view, that there was ample evidence to support the jury's findings. The evidence showed, as the judge's memorandum stated, that "the interests which the plaintiff sought to assert on behalf of Paragon [in the derivative action against Gross] and the interests of Gross were diverse and conflicting. The jury were warranted in finding that in undertaking and continuing the dual representation, the defendants failed to represent Paragon in accordance with good legal practice." The judge also correctly concluded that, in other particulars, which we need not repeat, the evidence warranted all the jury's answers.

Nonetheless, the judge concluded that "[t]he problem with the plaintiff's case is that she lacks standing to maintain it." The judge reasoned that, with respect to corporation (Paragon) matters, there was no attorney-client relationship between the plaintiff and the defendants. He expressly recognized that "Paragon was a closely held corporation, and by virtue of that fact the plaintiff and Gross owed to each other the rigorous fiduciary duty of partners and participants in a joint venture" as articulated in *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 593 (1975). See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 848 (1976). The judge also recognized that "[i]t can be argued as a logical corollary to that principle that an attorney or law firm undertaking to act as corporate counsel to such a corporation assumes the duties of attorney for each of the principal stockholders in all matters in which he (or it) acts for or on behalf of the corporation."

Despite those observations, however, the judge noted his lack of awareness "of any case in which it has been held that corporate counsel for a closely held corporation owes a duty to the individual stockholders of that corporation." He commented also that "it seems to be established that even in the case of a closely held corporation an action for recovery of an excessive salary paid to a corporate officer by the corporation can only be recovered in a derivative action brought on behalf of the corporation. *Bessette* v. *Bessette*, 385 Mass. 806 . . . (1982). In *Bessette*, the court said that the fiduciary duty on which the claim was based was owed to the corporation and not to the individual stockholders, so it could only be asserted as a stockholders' derivative action." The judge concluded that the jury's special verdicts established only that the defendants had violated duties they owed to Paragon, not to the plaintiff, and that, as a consequence, "the cause of action resulting from that [violation] only could be asserted as a derivative action on behalf of Paragon. . . . When the plaintiff ceased to be a stockholder as a result of the settlement of the various actions against Gross, she lost her standing to maintain a derivative action. She so acknowledged when she filed her . . . amended

405 Mass. 506                                513

Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.

complaint." "It follows," said the judge, "that despite the verdict of the jury in answer to special questions, judgment must be entered for the defendants on the first four counts of the complaint [the common law claims]." The plaintiff appealed, and we transferred the case to this court on our own initiative.

Indeed, there is logic in the proposition that, even though counsel for a closely held corporation does not by virtue of that relationship alone have an attorney-client relationship with the individual shareholders, counsel nevertheless owes each shareholder a fiduciary duty. See *Fasschi* v. *Sommers, Schwartz, Silver & Tyler, P.C.*, 107 Mich. App. 509 (1981), for a well-reasoned opinion supporting that view. Just as an attorney for a partnership owes a fiduciary duty to each partner, it is fairly arguable that an attorney for a close corporation owes a fiduciary duty to the individual shareholders. However, it is not necessary for us to resolve the question whether such a duty is owed in order to decide this case. Even if we were to recognize such a duty, we agree with the judge that the plaintiff's claim that the defendants improperly received funds from the corporation for representing Gross's personal interests (jury questions [1] - [3]) is a claim of harm to the corporation. The same is true of the claim that the defendants assisted Gross in diverting funds from the corporation for his personal use (jury questions [4] - [6]). Therefore, the plaintiff's interests in recovering those funds are properly asserted only through a derivative action brought on behalf of the corporation. *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524 n.5 (1989). *Bessette* v. *Bessette*, 385 Mass. 806, 809-810 (1982). *Mendelsohn* v. *Leather Mfg. Corp.*, 326 Mass. 226, 237 (1950). *Hirshberg* v. *Appel*, 266 Mass. 98 (1929). Since the plaintiff ceased to be a stockholder of Paragon when she transferred her interest to Gross, she lacks standing to assert such a claim. *Mendelsohn, supra* at 237.

The complaint also alleges that the defendants failed to disclose to the plaintiff facts material to her interests, and that they assisted Gross in his attempts to "squeeze out" the plaintiff from Paragon by wrongfully withholding money due her. Such claims are personal to the plaintiff. See *Wilkes* v. *Springside*

*Nursing Home, Inc., supra.* However, the jury were not presented with questions on those issues. By virtue of Mass. R. Civ. P. 49 (a), each party waives his right to a trial by jury of omitted issues raised by the pleadings or evidence unless he makes a timely demand for their submission to the jury. No such demand was made in this case. Rule 49 (a) further provides that "[a]s to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." Applying rule 49 (a) to this case, the judge is deemed to have made findings adverse to the plaintiff's claims of loss other than that derived from the corporate loss. We cannot say that those findings are clearly erroneous, and the plaintiff gives us no help in that regard. We conclude that the judge properly ordered judgment for the defendants on the plaintiff's common law claims (counts 1-4).

The plaintiff also argues that the judge erred in denying her recovery under G. L. c. 93A (count 5). The plaintiff based her c. 93A claim on the same allegations that she made in support of her common law claims. The judge found the defendants' dual representation of Paragon and Gross, and their acceptance of a referral fee from Paragon for services performed for Gross to be "'unfair or deceptive' acts or practices" within the meaning of G. L. c. 93A, § 11. He denied recovery, however, because he concluded that the "loss of money or property," G. L. c. 93A, § 11, that resulted from these acts was sustained by Paragon, and not by the plaintiff and that, therefore, the c. 93A claim, like the common law claims, could only be asserted properly by Paragon or on its behalf. We agree with the judge that the plaintiff lacked standing to maintain a c. 93A action to recover for losses that the judge found were sustained by Paragon, and the plaintiff proved no other personal losses. We conclude that judgment for the defendants on the G. L. c. 93A claim was correct.

*Judgment affirmed.*