Barrett, J.
Plaintiffs’ four-count complaint against defendants Marshall Field V (Field), CC&F Investors, Inc. (CC&F Investors), and CC&F Commercial, Inc. (CC&F Commercial) [herein collectively the CC&F defendants], and MGH Health Services Corporation (MGH) and Brim of Massachusetts, Inc. (Brim), alleges claims of breach of fiduciary duties (Count I), breach of contract (Count II), constructive trust and accounting (Count III), and G.L.c. 93A (1992 ed.), the Massachusetts Consumer Protection Act (Count IV).[3] MGH and Brim jointly filed for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The CC&F defendants subsequently jointly moved for summary judgment pursuant to rule 56. Plaintiffs oppose both motions.
For the following reasons, the motions for summary judgment will be allowed.
BACKGROUND
The following facts are taken from the materials properly before the court pursuant to rule 56(c).
In April 1987, MGH and Brim, alongwith CC&F Fox Hill Village Investment Company (CC&F F.H.V. Investment), a Massachusetts general partnership, formed the Fox Hill Village Partnership, a Massachusetts general partnership. They formed the Fox Hill Village-Partnership for the purpose of developing and managing Fox Hill Village, a nursing home consisting of 70 beds and a retirement community of approximately 357 units to be sold as cooperatives, in Westwood, Massachusetts. CC&F F.H.V. Investment, MGH, and Brim each owned a one-third partnership interest in the Fox Hill Village Partnership.
CC&F F.H.V. Investment was comprised of two partners. CC&F East Limited Partnership (CC&F East) was the managing general partner under the partnership agreement, and owned an 84% partnership interest. CC&F Investors, a Delaware corporation, was the general partner for CC&F East, and Field was a director, the president, and sole stockholder of CC&F Investors. CC&F Investment Company was the limited partner for CC&F East. CC&F Fox Hill Associates Limited Partnership (CC&F Fox Hill Associates), a Delaware limited partnership, was the other partner in CC&F F.H.V. Investment, and owned a 16% partnership interest. CC&F Fox Hill Associates’ certificate of limited partnership registration was filed on April 2, 1987, in the office of the Delaware Secretary of State. Despite being a foreign limited partnership, proper registration of CC&F Fox Hill Associates with the Secretary of the Commonwealth was never performed as required by Massachusetts law. On July 2, 1991, a certificate of cancellation for CC&F Fox Hill Associates was filed in the office of the Delaware Secretary of State.
CC&F Commercial, a Massachusetts corporation, was the general partner for CC&F Fox Hill Associates. Field was a director, the president, and sole stockholder of CC&F Commercial. CC&F Commercial owned a 6.25% partnership interest in CC&F Fox Hill Associates.
Plaintiffs Geoffrey M. Smyth (Smyth), Burton J. Power (Power), and Christopher C. Yule (Yule) were limited partners in CC&F Fox Hill Associates. Smyth and Power each owned a 25.78% partnership interest. Yule owned a 10.94% partnership interest. There were additional limited partners in CC&F Fox Hill Associates who owned a 6.25% partnership interest. They have not been joined as plaintiffs in this action.[4]
Smyth, Power, and Yule were employed by Cabot, Cabot & Forbes, Co. (CC&F), a real estate development company headquartered in Boston. Their interests as limited partners in CC&F Fox Hill Associates was part of their employment compensation. They were intimately involved with the development, financing, and construction of Fox Hill Village until 1989, when their employment with CC&F was terminated.
In 1990, CC&F F.H.V. Investment failed to meet a call for additional cash capital that had been assessed by the partnership. After extended negotiations between MGH, Brim, and CC&F F.H.V. Investment, the partners agreed that MGH and Brim would buy out CC&F F.H.V. Investment's partnership interest. The sale was concluded in August 1990, and MGH and Brim have continued to develop, operate, and fund Fox Hill Village as the sole partners for Fox Hill Village Partnership. As a result of the sale of CC&F F.H.V. Investment’s partnership interest to MGH and Brim, plaintiffs lost their respective interests in Fox Hill Village. Through this action, commenced on November 21, 1991, plaintiffs seek to recover for their interests in the Fox Hill Village.
DISCUSSION
Summary judgment under rule 56 “make[s] possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983), quoting Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summary judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, supra at 422; Community Nat’l Bank v. Dawes, supra at 553; Mass.R.Civ.P. 56(c). The moving party bears the burden under rule 56(c) to show by credible evidence, through reference to the materials specified in rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Smith v. Massimiano, 414 Mass. 81, 85-86 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A moving party who does not have the burden of proof at trial may meet its burden under rule 56(c) either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Fleshner v. Technical Communications Corp., 410 Mass. 805, 809 *297 (1991); Kourouvacilis v. General Motors Corp., supra at 716. Once the moving party satisfies the burden imposed by rule 56(c), the party opposing the motion may not rest on his pleadings or general denials, he must respond and “ ‘set forth specificfacts' (emphasis added) showing there is a genuine, triable issue. [Mass.RCiv.P.] 56(e).” Smith v. Massimiano, supra at 86, quoting Community Nat’l Bank v. Dawes, supra at 554.
The parties devote over two thousand pages of mem-oranda and supporting material to numerous issues in the context of the two motions for summary judgment. The breadth and scope of the issues raised by the parties which the court had to review has necessitated the elapse of a substantial period of time since the motions were orally argued. The court has carefully considered each of these issues. After a thorough review, however, one and only one issue needs to be addressed by this court: Do the plaintiffs have a right to maintain this action in this court? The answer is no.[5]
The plaintiffs do not dispute that whatever rights they may have against the defendants principally are governed by the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §§17-101 to 17-1109,[6] and substantive Delaware case law, since CC&F Fox Hill Associates was a Delaware limited partnership. However, a foreign limited partnership such as CC&F Fox Hill Associates may not maintain any action nor may it recover “in any of the courts of the [the [C]om-monwealth [of Massachusetts] as long as” the partnership has failed to properly register with the Massachusetts secretary of state. G.L.c. 109, §56(a) (1992 ed.). Plaintiffs’ claims center on the loss of their investments in the Fox Hill Village project, as limited partners in CC&F Fox Hill Associates. Thus, this court must determine whether plaintiffs’ claims are derivative, i.e. affecting the partnership as a whole; or direct, i.e. for harm suffered individually by plaintiffs as limited partners not in proportion to their limited partnership interests.
The Court of Chancery of Delaware recently analyzed similar claims in the context of a Delaware limited partnership. Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 14-17 (Del.Ch. 1993).[7] As that court noted, quoting from Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 351 (1988): “The distinction between derivative and individual actions rests upon the party being directly injured by the alleged wrongdoing.” Litman v. Prudential-Bache Properties, Inc., supra at 15 (emphasis in original). If the harm is to the business entity, then it is a derivative claim. Id. If, however, the equity holder (whether it be a stockholder or limited partner), in his individual capacity suffers “an injury which is separate and distinct from that suffered by other [equity holders], or a wrong involving a contractual right. . . such as the right to vote, or to assert majority control, which exists independently of any right of the corporation (citation omitted),” then the claim is direct and not derivative. Id. Further, “in determining whether a claim is derivative or direct in nature, [the court] must look to the nature of the wrongs alleged in the body of the plaintiffs complaint, not plaintiffs’ characterization or stated intention (citation omitted).” Id.
In reviewing the rights, obligations, and duties of the partners in the various partnership entities involved in the Fox Hill Village project, the alleged harm, if at all, which resulted from the actions leading up to the sale of CC&F F.H.V. Investment’s partnership interest in the Fox Hill Village Partnership was a harm which each partnership entity as a whole would have suffered. See Litman v. Prudential-Bache Properties, Inc., supra at 15-17. Therefore, the harm which plaintiffs allegedly suffered was not separate and distinct, and thus not independent of the harm which the other partners in CC&F Fox Hill Associates would also have suffered. See id. Accordingly, plaintiffs’ claims are derivative claims despite the labels which plaintiffs have chosen to place on them in their complaint (or attempt to place on them in their requested amended complaint). See id.
Since the plaintiffs claims are derivative claims, they are claims on behalf of CC&F Fox Hill Associates. Thus, the claims can be asserted in this court only if the partnership would be entitled to pursue the claims itself. However, CC&F Fox Hill Associates would not be able to maintain an action or recover on the claim in this court because it failed to register with the Massachusetts secretary of state. See G.L.c. 109, §56(a). Therefore, plaintiffs also may not maintain this action or recover on the claims. See id.
As to the G.L.c. 93A claims in Count IV of plaintiffs’ complaint, our appellate courts have held that G.L.c. 93A does not apply involving “a private transaction between individual members of the same partnership,” Newton v. Moffie, 13 Mass.App.Ct. 462, 469 (1982), or to “in-traenterprise” transactions, see Puritan Medical Center, Inc. v. Cashman, 413 Mass. 167, 179-80 (1992); Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988), Riseman v. Orion Research, Inc., 394 Mass. 311, 312-14 (1985). Further, where a plaintiff bases his or her G.L.c. 93A claim on the same allegations supporting common law claims, and the plaintiff lacks standing to assert the common law claims either directly or derivatively, then the plaintiff also lacks standing to sue for the G.L.c. 93A claim. Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C. 405 Mass. 506, 514 (1989). See also Robertson v. Gaston Snow & Ely Bartlett 404 Mass. 515, 527 (1989).[8] Accordingly, plaintiffs’ G.L.c. 93A claims similarly fail.
ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment shall ENTER for all defendants on the claim in Counts I, II, III, and IV, of the plaintiffs’ complaint.

 Plaintiffs filed a motion to amend the complaint by substituting a verified complaint, retaining the claims in Counts I through III, deleting the G.L.c. 93A claim in Count IV, and substituting a new claim to reach and apply pursuant to G.L.c. 214 (1992 ed.). The court separately has denied that motion in the margin.

 The parties and their relationships are detailed in a schematic attached hereto as Addendum “A.” [Editor’s Note: Addendum A is not reproduced here.]

 Plaintiffs argue that this court has the power to order a winding up of the affairs of CC&F Fox Hill Associates, and to distribute to plaintiffs any claims which the partnership may have, as part of that winding up. The argument is without merit. This court does not have jurisdiction to order the dissolution and winding up of the affairs of a Delaware limited partnership. See G.L.c. 109, §45 (Superior Court has power to order dissolution of a “limited partnership”); §46 (Superior Court has power to wind up a limited partnership’s affairs); and §1(7) (“Limited partnership ... a partnership formed . . . under the laws of the commonwealth . ..’’). See also 6 Del. C. §§17-802 (Delaware’s Court of Chancery has power to order dissolution of a Delaware limited partnership); §§17-803 (Delaware’s Court of Chancery has power to wind up the affairs of a Delaware limited partnership).

 Delaware adopted the 1976 Revised Uniform Limited Partnership Act, with certain modifications, in 1982. Massachusetts also adopted the 1976 Revised Uniform Limited Partnership Act, with certain modifications, by St. 1982, c. 202, §1, codified in G.L.c. 109, §§1-62, with certain sections subsequently amended by St. 1983, c. 206, §4, and by St. 1988, c. 286, §§1-22.

 The court analyzed the claims by reference to corporate law principles concerning derivative and direct claims by stockholders. Litman v. Prudential-Bache Properties, Inc., supra at 15. The Massachusetts Appeals Court similarly has held that applying corporate law principles to the limited partnership is appropriate. See Partnership Equities, Inc. v. Marten, 15 Mass.App.Ct. 42, 48 (1982) (using stock subscription corporate law principles to measure “the extent of obligation of a subscriber to a limited partnership").

 The CC&F defendants also argued that the G.L.c. 93A claims against them are barred because the claims arose out of the employment relationship between plaintiffs and CC&F. See Manning v. Zuckerman, 388 Mass. 8 (1982). However, the claims against the CC&F defendants do not arise out of the employment relationship; but, rather on actions under taken after the employment relationship was ended. Therefore, the principle in Manning would not appear to bar the G.L.c. 93A claims against the CC&F defendants.